IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 4:05CR3001-2 |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| COURTNEY ALLEN CONEY, | ) | |
| | ) | |
| Defendant. | ) | |

Prosecutors and defense lawyers sometimes enter into binding plea agreements that require a judge to impose a particular sentence or apply a particular sentencing range that is above or below that produced by proper application of the advisory Guidelines. When such a plea agreement smells too much like cow manure siphoned from a feedlot after a swampy, summer rain,[1] judges should not pretend the odor is lilac. On the other hand, if the plea agreement stinks, but the stench is more like kitty litter than cow manure, a judge should hold his or her nose and move on. The trick is to discern the difference.

In this opinion, I explain why I adopted a Rule 11(c)(1)(C)[2] plea agreement that called for a sentence that fell 30 months below the low end of the advisory

---

[1]Some say I know a lot about manure. While in the practice, I litigated (and, I am proud as punch to say, won) a case involving a fight over the value of cow manure harvested from a feedlot. Thereafter, my law partners often remarked that the "great BS" case was the high point of my career. They were right.

[2]That Rule allows the parties and their lawyers to bind the judge at sentencing by agreeing that a "specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply . . . ." Fed. R. Crim. P. 11(c)(1)(C). That is, "such a recommendation or request binds the court once the court accepts the plea agreement." Id.

Guidelines.[3]  I also explore two distinct approaches for determining whether to accept or reject Rule 11(c)(1)(C) plea agreements that call for sentences above or below the advisory Guidelines.  One approach relies upon specific provisions of the advisory Guidelines.  The other relies upon "extra-Guidelines" reasons that do not undermine the Guidelines and are consistent with the broad, statutory goals of sentencing.  It is the second approach (a variance, in post-<u>Booker</u>[4] parlance) that carries the day here.

## I.  BACKGROUND

This case involves a van and a whole bunch of cocaine.  It also involves a gun.  The details are set forth below.

### A.  Personal Characteristics

Courtney Allen Coney (Courtney) is a black male standing 5'7" and weighing 330 pounds.  (Revised Presentence Investigation Report, dated August 8, 2005 (PSR) ¶ 63.)  He is 26 years of age.  (PSR at page 2.)  Before his arrest, Courtney resided near Minneapolis, Minnesota.  (<u>Id.</u>; PSR ¶ 57.)

Courtney is not married and has no children.  (PSR ¶ 62.)  His parents are divorced.  (PSR ¶ 59.)  Both have a history of substance abuse, and Courtney's father is due to be released from prison this year after serving 10 years for robbery.  (PSR ¶¶ 59-60.)  On the other hand, Mrs. Coney has overcome her substance abuse problems and no longer abuses drugs.  (PSR ¶ 59.)  The case that brings Courtney before this court also involves his brothers Robert Coney (Robert), age 20, and Marco Coney (Marco), age 29.  (PSR ¶¶ 20, 61.)

---

[3]Citations to the Guidelines, including Policy Statements and Commentary, are to the Manual effective November 1, 2004 unless otherwise noted.

[4]<u>United States v. Booker</u>, ___ U.S. ___, 125 S. Ct. 738 (2005).

Courtney did not complete high school.  (PSR ¶ 67.)  He has a problem with high blood pressure.  (PSR ¶ 63.)  The defendant is probably addicted to marijuana. (PSR ¶ 65.)  However, Courtney does not think he needs substance abuse treatment. (PSR ¶ 66.)

Although he was questioned by Minnesota authorities regarding a first degree murder shortly before his arrest in this case, the defendant has not been charged with that crime.   (PSR ¶ 57.)   Otherwise, Courtney's legal problems, while not insignificant, have been petty (possession of marijuana, damage to property and disorderly conduct). (PSR ¶¶ 48-52, 54-57.)  He has three criminal history points. (PSR ¶ 53.)

## B.  The Underlying Facts, the Original Charges and the Suppression Motion

On December 19, 2004, Robert was driving, Marco was seated in the front passenger seat, and Courtney was seated in the third row seat of a vehicle traveling east-bound through Nebraska.  (PSR ¶ 20, 26.)  They were riding in a rented Dodge Caravan (minivan) at the time of the traffic stop which led to the discovery of approximately 7 kilograms of cocaine, 2 pounds of marijuana, and a firearm.  (Id.) The drugs were found under the middle seat.  (PSR ¶ 26.)  No one occupied that seat. The gun, a loaded .45 caliber semi-automatic handgun, was found in a bag located in the rear cargo area of the van, under the bench seat where Courtney was seated.  (PSR ¶ 21, 26.)

The three brothers were charged with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine.  (PSR ¶ 1.)  They were also charged with possession with intent to distribute 5 kilograms or more of cocaine.  (PSR ¶ 2.)  Marco was charged with using and carrying the gun in relationship to the drug trafficking crimes alleged in the drug counts.  (PSR ¶ 3.)

As might be expected, the brothers filed motions to suppress. They lost. Magistrate Judge Piester found, and I agreed, that the stop and search were lawful.

During the presentation of evidence on the suppression motions, evidence regarding Courtney's control of the van was presented. That is, there were two authorized drivers on the rental agreement for the van: Janice Coney, the brothers' mother who was not present in the vehicle, and Courtney, who was present in the vehicle. (Filing 69 (Tr.), at 213.) Because it was cheaper than purchasing three airline tickets, Janice Coney testified that she had in fact rented the van so that her sons could attend a family gathering in California. (Id. at 212-17.)

In addition, there was also evidence that Marco controlled both the van and the other two, younger brothers. For example, Courtney followed the direction of his older brother Marco and consented to the search of the van despite Courtney's initial reluctance to permit the search. (Id. at 53-56.)

## C.  Marco and Robert's Pleas and Plea Agreements

Ultimately, Marco, the oldest of the brothers, entered a conditional guilty plea to conspiracy to distribute 5 kilograms or more of cocaine pursuant to the terms of a plea agreement. (E.g., Filing 113 (plea agreement) ¶ 1.) The agreement allowed Marco to appeal the suppression issues. (Id.) The other counts were to be dismissed. (Id.) Pursuant to the provisions of Fed. R. Crim. P. 11(c)(1)(C), the parties agreed that Marco should be sentenced to 121 months in prison. (Id. ¶ 11.) I have not accepted Marco's plea agreement.[5]

---

[5]For purposes of Courtney's case only, I assume that I will accept Marco's plea agreement. However, no decision has been made on that question. I reserve the right to reject Marco's plea agreement, particularly if the 121-month sentence called for in the plea agreement falls substantially below the otherwise applicable Guidelines range. Marco's presentence report has not been completed.

Pursuant to a non-Rule 11(c)(1)(C) agreement, Robert, the youngest of the brothers and the driver of the van, tendered a conditional guilty plea to an information charging misprision of a felony with the proviso that the indictment would be dismissed as to him at the time of sentencing. (Filing 101 (plea agreement) ¶ 1.) Robert also reserved the right to appeal the suppression questions. (Id.)

Unlike Marco's plea agreement, Robert's plea agreement does not specify a particular prison sentence. However, according to his presentence report, Robert's Guidelines custody range was 24 to 30 months. (Robert's PSR ¶ 79.) After I sentenced Courtney, I accepted Robert's plea agreement and sentenced him to 24 months in prison.

### D. Courtney's Plea and Plea Agreement

Courtney and the government entered into a Rule 11(c)(1)(C) plea agreement that allowed Courtney to plead guilty to an information charging him with being an "unlawful user of . . . cocaine" who, on December 19, 2004, knowingly and unlawfully possessed the .45 caliber semi-automatic weapon that had been found in the van.[6] (Filing 91 (information); Filing 126 (plea agreement).) The agreement allowed Courtney to appeal the suppression issues. (Filing 126, at ¶ 1.) Also, the indictment as to Courtney was to be dismissed when he was sentenced on the crime charged in the information. (Id.)

In Courtney's written petition to enter a plea of guilty, he admitted that: "I possessed a firearm while I was a user of cocaine and I knew [the] gun was

---

[6]The charge was based on 18 U.S.C. § 922(g)(3). In pertinent part, that statute reads as follows: "It shall be unlawful for any person . . . who is an unlawful user of . . . any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) . . . to . . . possess in or affecting commerce, any firearm . . . ." Id.

used/possessed in connection with a narcotics crime." (Filing 98, at ¶ 45.) Indeed, during the plea-taking colloquy between Magistrate Judge Piester, the defendant and his counsel, Courtney admitted that his possession of the weapon was linked to the cocaine found in the van on December 19, 2004. (Filing 107 (Tr.), at 25-27.)

The plea agreement required a specific sentence of 57 months in prison. It also explained how that sentence was determined.[7] That is:

> Pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P., the parties agree the Defendant shall be sentenced to 57 months' imprisonment. The parties reached this agreement by making the following calculation: Mr. Coney's criminal history is Category II. Pursuant to U.S.S.G. [§]2K2.1(a)(6), the base offense level attributable to Mr. Coney is Level 14. That should be increased by four levels, pursuant to U.S.S.G. [§]2K2.1(b)(5). Mr. Coney's base offense should be increased by an additional four levels, pursuant to U.S.S.G. [§]5K2.21. This results in a total offense level of 22, which, at criminal history category II, corresponds to a Guideline range of 46 to 57 months. The parties have agreed Mr. Coney should be sentenced at the top end of that Guideline range.[8]

(Filing 126, at ¶ 6.)

---

[7]I compliment the lawyers, particularly the government's counsel, for explaining in the plea agreement how they arrived at the Rule 11(c)(1)(C) sentence. As I later explain, the fact that the specific sentence called for under the plea agreement was explicitly calculated with the Guidelines in mind became a substantial factor in my decision to adopt the plea agreement even though the calculation was wrong.

[8]This calculation did not give Courtney a reduction for acceptance of responsibility. That appears to have been intentional. As the probation officer later noted, Courtney, while admitting the gun was linked to the drugs, was evasive about his specific knowledge of the drugs. (PSR ¶ 27.) Nevertheless, and despite this enhancement, Courtney's plea agreement called for a sentence *less than* the properly calculated sentence under the advisory Guidelines.

### E.  The Presentence Report and the Government's Objection

A presentence report was prepared for Courtney which was centered on the one-count information, but which looked at all the relevant conduct.  As is the practice in the District of Nebraska, the probation officer independently investigated the facts and independently calculated the Guidelines despite the provisions of the Rule 11(c)(1)(C) plea agreement.[9]  The probation officer also critically evaluated the impact of the plea agreement on the Guidelines.  (PSR ¶ 78.)

The probation officer found that the parties had erred in their Guidelines calculations.  (PSR addendum.)  Specifically, the probation officer found that the parties had missed a cross-reference when calculating the base offense level.  (Id.)

The long and short of it was that Courtney was held accountable for uncharged or dismissed conduct; that is, he got stuck with the dope.  See U.S.S.G. §§ 2K2.1(c)(1)(A); 2X1.1(a) & (b)(2).  As a result, the proper base offense level was the *greater of* the base offense level determined under U.S.S.G. § 2K2.1 (possession of a firearm by a drug user) and U.S.S.G. § 2D1.1 (cocaine trafficking).  (PSR ¶¶ 35-36.) Consequently, Courtney faced a total offense level of 28 (PSR ¶ 43)[10] instead of 22 as set forth in his plea agreement.

---

[9]We are blessed with smart probation officers who are fiercely independent of the parties and who seek only to provide the judge with the unvarnished truth and an unbiased application of the law.  That is one of the great by-products of the Guidelines system.  When judges use Booker as an excuse to treat the Guidelines like the funny papers, diverting to read, but easy to forget, probation officers have much less of an incentive to be vigorous.

[10]Unlike the plea agreement, the presentence report gave Courtney credit for acceptance of responsibility.  (PSR ¶¶ 41-42.)

Thus, Courtney confronted a prison sentence of between 87 and 108 months. (PSR ¶ 77 (criminal history category II, total offense level 28).) In other words, if I followed the advisory Guidelines and I rejected the plea agreement, Courtney would not receive the bargained-for sentence of 57 months.

No party objected to the probation officer's assessment of the Guidelines. The government, however, filed a different kind of objection. (Filing 117.) The government objected to the presentence report because it was "outside the plea agreement." (<u>Id.</u>)

### F. The Court's Tentative Findings and the Parties' Explanation

Upon receipt of the government's objection, I issued tentative findings. (Filing 122.) I notified the parties that I would resolve the objection at sentencing, but the PSR was otherwise correct in all respects. I also advised the parties that I might not accept the plea agreement because the plea agreement "appears to provide this defendant with a 'windfall' of between 30 and 51 months in prison." (Filing 122, at ¶ 2.)

At the sentencing hearing held on September 1, 2005, the lawyers first asked to speak to me in chambers. I agreed. These competent, experienced lawyers candidly admitted that the probation officer's calculation was the proper one under the advisory Guidelines. They also explained the basis for their agreement. I skeptically interrogated them. We then proceeded to the courtroom, and I repeated that inquiry on the record.

In the end, I accepted the Rule 11(c)(1)(C) plea agreement. I sentenced Courtney to 57 months in prison as I was required to do after accepting the plea agreement. I next explain why I did so.

## *II. ANALYSIS*

Because the Guidelines almost always reflect the harmonization of all the statutory purposes of sentencing in a way that has been consistently approved both explicitly and implicitly by Congress, I read <u>Booker</u> to require a sentencing judge to exercise his or her discretion in a way that gives significant deference to the Guidelines. In other words, most sentences should be within the advisory Guidelines.[11] But, <u>Booker</u> also gives judges the power (discretion) to vary from the Guidelines by examining the statutory goals of sentencing outside the lens of the advisory Guidelines. Recognizing that the Guidelines are truly advisory, how, then, does one decide to accept or reject a Rule 11(c)(1)(C) plea agreement that calls for a sentence or range outside the Guidelines?

Since plea bargaining can make a mockery of the advisory Guidelines, and those Guidelines should be given great weight after <u>Booker</u>, a judge should reject a Rule 11(c)(1)(C) plea agreement if there is not a fit between the terms of the plea

---

[11]<u>See</u>, <u>e.g.</u>, <u>United States v. Wanning</u>, 354 F. Supp. 2d 1056, 1059-1062 (D. Neb. 2005). On the other hand, if, in a particular case, the advisory Guidelines (including the provisions for departure) have failed to implement the statutory goals of sentencing in the manner Congress intended, <u>Booker</u> requires the judge to impose a sentence consistent with those goals and at variance with the Guidelines. <u>Id.</u> at 1062-63, 1063 n.13. In my experience, those cases are almost as rare as an innocent defendant. Nonetheless, every so often, cases come along that justify a variance. This case happens to be one.

agreement and the Guidelines.  On the other hand, the fit need not be perfect.  There are two approaches[12] that will tell us whether the "fit" is snug enough.[13]

### A. The Advisory Guidelines Impose a Duty Upon the Judge to Assure that a Rule 11(c)(1)(C) Plea Agreement Requiring a Sentence or Sentencing Range Outside the Guidelines Is Premised Upon a "Justifiable Reason."

The Guidelines, which <u>Booker</u> directs sentencing judges to consult along with the statutory goals of sentencing, explicitly require that plea-bargained sentences straying from the Guidelines rest upon "justifiable reasons."  Specifically, U.S.S.G. § 6B1.2(c), p.s., relating to standards for the acceptance of plea agreements, provides the following rule for Rule 11(c)(1)(C) plea agreements:

> (c)    In the case of a plea agreement that includes a specific sentence (Rule 11(c)(1)(C)), the court may accept the agreement if the court is satisfied either that:
>
>> (1)    the agreed sentence is within the applicable guideline range; or
>>
>> (2)    (A) <u>the agreed sentence departs from the applicable guideline range for justifiable reasons</u>; and (B) those reasons are specifically

---

[12]Other district judges have confronted this issue in published opinions.  One such opinion has been particularly helpful to me.  <u>See</u> <u>United States v. Stone</u>, 374 F. Supp. 2d 983, 989-991 (D.N.M. 2005) (Browning, J.) (applying a two-step approach, the judge accepted as a "variance" a stipulated sentence well below the advisory Guidelines because of the government's concerns regarding the fragility and credibility of a victim of sexual abuse).

[13]These approaches dovetail with the new Statement of Reasons form (SOR) that district judges are using throughout the nation to explain in a uniform manner whether their sentences were centered on the Guidelines (SOR §§ 4 and 5) or not centered on the Guidelines (SOR §§ 4 and 6).  The new SOR is attached.

> set forth in writing in the statement of reasons
> or judgment and commitment order.

Id. (emphasis added)*.*

The commentary to this section explains that "justifiable reasons" mean Guidelines-based reasons. U.S.S.G. § 6B1.2, p.s. & comment. While this commentary limits "justifiable reasons" to reasons found within the Guidelines, the effect of Booker is to expand the range of "justifiable reasons" to include those reasons that are consistent with the statutory goals of sentencing even though those reasons might not be recognized by the Guidelines.

Thus, post-Booker, "justifiable reasons" for accepting a stipulated sentence or range above or below the Guidelines can profitably be split into two categories. They are (1) reasons found within the Guidelines and thus consistent with them, and (2) reasons found outside the Guidelines that are consistent with the statutory goals of sentencing and do not undermine the Guidelines.[14]   I discuss each category next.

### B. "Justifiable Reasons" From Within the Guidelines

For the first approach, I propose the following formulation:

> If a Rule 11(c)(1)(C) plea agreement requires a sentence or sentencing range outside the Guidelines, the plea agreement should be accepted *if* the plea agreement can honestly be justified by reference to a specific provision of the advisory Guidelines even though that sentence or sentencing range is otherwise outside the Guidelines.

---

[14]This discussion assumes that the judge has not accepted the Rule 11(c)(1)(C) plea agreement before seeing the presentence report. In most cases, it is wise to defer acceptance of such a plea agreement until the presentence report has been received. U.S.S.G. § 6B1.1, comment (recommending that plea agreements not be accepted until the court has reviewed the presentence report).

There are two circumstances where this approach is likely to apply.

Despite a thorough investigation of the facts presented in a presentence report, the government may not believe that particular facts leading to the Guidelines sentence can be proved.[15] Thus, the government may have signed a binding plea

_____

[15]The preponderance (or greater weight) of the evidence standard normally applies. U.S.S.G. § 6A1.3(b), comment. After a detailed and thoughtful discussion of the legal differences between trials and sentencing proceedings, the Commission concluded that "use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case." Id. The Booker decision changed nothing regarding this proof standard. See United States v. Pirani, 406 F.3d 543, 551 n.4 (8th Cir. 2005) (en banc) ("Nothing in Booker suggests that sentencing judges are required to find sentence-enhancing facts beyond a reasonable doubt under the advisory Guidelines regime."), petition for cert. filed (U.S. July 27, 2005) (No. 05-5547). See also United States v. Patient Transfer Service, Inc., 413 F.3d 734, 745 (8th Cir. 2005) (rejecting a "reasonable doubt" standard for use of acquitted conduct at sentencing, and stating that in Booker the "Supreme Court maintained the trial court's fact finding authority without setting a new standard"). I recognize, however, that, despite the aforementioned rulings by the Court of Appeals, Judge Bataillon has decided to use a "beyond a reasonable doubt" standard at sentencing. See United States v. Kwame Okai, 2005 WL 2042301* 10 (D. Neb. Aug 22, 2005). As I understand it, he reasons that because the Sentencing Reform Act (SRA) has no statute that specifies a burden of proof to use at sentencing, a Fifth Amendment "due process" problem may arise unless one elects to avoid that lurking problem by construing the SRA to require proof beyond a reasonable doubt. I respectfully disagree. Initially, there is no need to apply the doctrine of "constitutional avoidance" since there is no precedent to support a due process claim. At this late date, it would border on the perverted for the Supreme Court to discover a previously unknown Fifth Amendment right to "proof beyond a reasonable doubt" at a federal sentencing proceeding using an advisory Guidelines system when the justices failed to articulate such a right in Booker, Blakely or Apprendi. The "constitutional avoidance" argument is therefore a "strawman." Furthermore, the Guidelines, including the methods for resolving disputed sentencing factors, have been approved by Congress. See 28 U.S.C. § 994(*o*) & (p). Hence, Congress has spoken, and there is no room for a contrary construction even if there were a problem.

-12-

agreement to avoid the dispute, and save its resources. Since the Guidelines require that disputed facts be resolved on "information [that] has sufficient indicia of reliability to support its probable accuracy," U.S.S.G. 6A1.3(a), p.s., a sentencing judge, after careful inquiry of counsel, might conclude that the most readily provable offense conduct supports the stipulated sentence or range as opposed to that suggested in the presentence report. In that circumstance, the judge would adopt the plea agreement, sustain an objection to the presentence report regarding the facts resolved by the plea agreement, recalculate the Guidelines, and then sentence the defendant accordingly.

Second, the parties may have recognized (implicitly or explicitly) in their binding plea agreement an adjustment or a departure authorized by the Guidelines[16] that was not evident to the probation officer. After careful inquiry of counsel, the sentencing judge might conclude that such an adjustment or departure is both warranted under the advisory Guidelines and consistent with the stipulated sentence or range. In that event, the judge would adopt the plea agreement, adjust the Guidelines calculation, or depart from it, for the reasons articulated by counsel, and sentence the defendant accordingly.

But, what if the binding plea agreement cannot be justified by reference to the Guidelines? I discuss that matter next.

### C. *"Justifiable Reasons" From Outside the Guidelines*

As noted earlier, there may be circumstances that warrant a sentence different from that required by application of the advisory Guidelines and those reasons may not be based upon any particular provision of the Guidelines. Confronted with a

---

[16]For example, see U.S.S.G. § 3B1.2 (pertaining to mitigating role), or U.S.S.G. § 5K2.0 (pertaining to departures generally) or U.S.S.G. § 4A1.3 (pertaining to departures based on criminal history).

binding plea agreement that describes such a "variance," the following approach is appropriate if one believes, as I do, that the advisory Guidelines should remain the centerpiece of sentencing after <u>Booker</u>. That is, under the second approach:

> If a Rule 11(c)(1)(C) plea agreement requires a sentence or sentencing range outside the Guidelines, and the plea agreement cannot honestly be justified by reference to a specific provision of the Guidelines, a judge should presume that the plea agreement is improper and therefore the judge should reject it *unless* the parties can demonstrate that (1) use of the bargained-for sentence or range will not undermine the Guidelines and (2) there is a compelling reason for implementing the agreement.

It is not possible to categorize all the circumstances where this approach might warrant the adoption of a binding plea agreement that appears inconsistent with the Guidelines. This is because this second approach is purposefully broad in fidelity to <u>Booker</u>'s command that a sentencing judge must be sensitive not only to the advisory Guidelines, but also to the statutory goals of sentencing. This rule is not, however, easy to satisfy because it presumes that the plea agreement will be rejected unless the parties can demonstrate no real harm to the advisory Guidelines and a compelling reason for doing something different.

Thus, if the judge, after a skeptical and probing inquiry of counsel, concludes that the binding plea agreement, while above or below the advisory Guidelines, does not undermine the purposes of the Guidelines and is premised upon very persuasive reasons, the judge will adopt the plea agreement and sentence the defendant accordingly. In that event, the judge will not change the Guidelines calculations or purport to depart from the advisory Guidelines. On the contrary, the judge will express his or her decision as *a variance* from the Guidelines based upon a binding plea agreement that has been implemented for specified reasons.

-14-

### D.  The Foregoing Principles Applied to This Case

The parties did not rely upon and I did not find any Guidelines-based reason justifying the specific sentence called for under the binding plea agreement.  On the contrary, the parties admitted that the Guidelines were properly calculated by the probation officer.  In addition, there was no reason to doubt that the government could prove the facts that drove the Guidelines calculations.  Courtney had essentially admitted those facts. Moreover, the binding plea agreement was not motivated by a justifiable adjustment or departure that the probation officer had missed.  Thus, the first approach outlined earlier did not justify acceptance of the binding plea agreement.

Nevertheless, I found that the second approach justified adoption and implementation of the 57-month sentence even thought it was below the proper advisory Guidelines calculation of 87 to 108 months in prison.  I came to this conclusion after skeptically questioning counsel both in chambers and later on the record.  Counsel persuaded me that use of the bargained-for sentence would not undermine the Guidelines.  They also persuaded me that there were compelling reasons for implementing the agreement.  Next, I explain why I arrived at these conclusions.

I adopted the binding plea agreement and *varied* from the otherwise properly calculated advisory Guidelines imprisonment range because of the following:

*       Courtney's plea agreement was based upon a good faith, but mistaken, Guidelines calculation.  There was no effort to subvert the advisory Guidelines.  Indeed, the parties openly set out the manner in which they approached the Guidelines in their binding plea agreement. The Sentencing Commission has recognized that plea-bargains drive a large percentage of guilty pleas and guilty pleas resolve nearly 90 percent of all federal criminal cases. U.S.S.G. § 1A1.1, at page 6

(Editorial Note). The Commission has also expressed no desire to curtail the practice of plea bargaining as long as the Guidelines are not undermined. <u>See</u> U.S.S.G. §§ 6B1.1, p.s. to 6B1.4, p.s. Furthermore, the Commission has made it clear that judges are not authorized "to intrude upon the charging discretion of the prosecutor." U.S.S.G. § 6B1.2, comment.[17]  As a result of the "real world" need and justification for plea bargains and the desirability of honoring appropriate "separation of powers" principles regarding the charging decisions of the Executive Branch, a Guidelines-reasoned, but mistaken, plea agreement (like this one) should be accorded some deference by a judge.[18]

\*      The difference between the bargained-for sentence of 57 months and 87 months, the low end of the advisory Guidelines,[19] was 30 months. While this difference is not small, implementation of the 57-month sentence for Courtney would not create an intolerable sentencing disparity should I impose an 87-month sentence on a otherwise similarly situated defendant who was not a beneficiary of such a mistaken plea agreement. <u>See</u> 18 U.S.C. § 3553(a)(6) (avoiding unwarranted sentencing disparity).

\*      Courtney's plea agreement, and those of his brothers, reflect a good faith and principled effort, with the Guidelines explicitly in mind, to honestly apportion culpability between the three brothers so that the

---

[17]Remember that Courtney was pleading guilty to a one-count information filed after the indictment.

[18]As I get older, I appreciate even more the maxim that the "perfect should never become the enemy of the good."

[19]When sentencing within the Guidelines range, I generally sentence defendants who have pleaded guilty and who have minor criminal histories (like Courtney) to the low end.  After all, no sentence should be greater than necessary.

-16-

real offense conduct of each is recognized and punished. <u>See</u> 18 U.S.C. § 3553(a)(1) (a sentence should reflect the nature and circumstances of the offense). Those agreements also allocated culpability between Courtney and his brothers in such a way as to avoid unwarranted sentencing disparity as among the three co-defendants. 18 U.S.C. § 3553 (a)(6) (a sentence should avoid unwarranted sentencing disparity).

\*      Absent a global settlement, and given the fact that the three men were traveling together in one car filled with luggage but no defendant physically possessed the cocaine or the gun, a trial may have resulted in the unfortunate acquittal of one or more guilty defendants. <u>See</u>, <u>e.g.</u>, <u>United States v. Mendoza-Larios</u>, 416 F.3d 872, 873-876 (8th Cir. 2005) (evidence was insufficient to prove defendants knowingly possessed large amount of cocaine, as required to support conviction for possession with intent to distribute cocaine and conspiracy to distribute cocaine, even though defendants traveled for hours, each driving at times, in a car containing a large amount of cocaine concealed in a hidden compartment). Thus, because the government will obtain felony convictions and prison sentences for Courtney and his two brothers, the statutory goal of protecting the public from further crimes by each of the three defendants was furthered by the certainty of the plea bargains. 18 U.S.C. § 3553(a)(2)(C) (a sentence should protect the public from further crimes of the defendant). Courtney's plea agreement was one of three keys necessary to achieving that result. In addition, the agreements which secured the three convictions and significant prison sentences also serve the statutory goal of deterring others who might think about jointly transporting drugs and guns in a car. 18 U.S.C. 3553(a)(2)(B) (sentences should afford adequate deterrence to criminal conduct). Indeed, the total of the prison sentences for all three brothers who rode together in the van and who transported the dope and the gun is likely to be around 202

months[20] (nearly 17 years) and Courtney's share (57 months) is a significant part of that substantial, aggregate punishment.    Thus, Courtney's sentence and those of his brothers serve the statutory goals of sentencing.  18 U.S.C. §3553(a)(2)(A) (sentences should reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense).

### III.  CONCLUSION

Courtney's plea agreement called for a prison sentence 30 months less than that provided by the low end of the advisory Guidelines.  While the "stink" of that agreement was strong enough to warrant investigation, it was not so strong as to require rejection.

Accordingly,

IT IS ORDERED that the plea agreement (filing 126) has been accepted, and the prison sentence called for under that plea agreement is warranted as a variance from the advisory Guidelines.

September 8, 2005.                         BY THE COURT:

                                          *s/Richard G. Kopf*
                                          United States District Judge

---

[20]That is, 121 months for Marco, 57 months for Courtney, and 24 months for Robert.

AO 245B  (Rev. 06/05) Criminal Judgment
Attachment---Statement of Reasons

DEFENDANT:
CASE NUMBER:
DISTRICT:

# STATEMENT OF REASONS
**(Not for Public Disclosure)**

**I    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT**

A    ☐    **The court adopts the presentence investigation report without change.**

B    ☐    **The court adopts the presentence investigation report with the following changes.**
(Check all that apply and specify court determinations, findings, or comments, referencing paragraph numbers in the presentence report, if applicable.)  (Use page 4 if necessary.)

1    ☐ **Chapter Two of the U.S.S.G. Manual** determinations by court (including changes to base offense level, or specific offense characteristics):

2    ☐ **Chapter Three of the U.S.S.G. Manual** determinations by court (including changes to victim-related adjustments, role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

3    ☐ **Chapter Four of the U.S.S.G. Manual** determinations by court (including changes to criminal history category or scores, career offender, or criminal livelihood determinations):

4    ☐ **Additional Comments or Findings** (including comments or factual findings concerning certain information in the presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation, or programming decisions).

C    ☐    **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**

**II    COURT FINDING ON MANDATORY MINIMUM SENTENCE** (Check all that apply.)

A    ☐    No count of conviction carries a mandatory minimum sentence.

B    ☐    Mandatory minimum sentence imposed.

C    ☐    One or more counts of conviction alleged in the indictment carry a mandatory minimum term of imprisonment, but the sentence imposed is below a mandatory minimum term because the court has determined that the mandatory minimum does not apply based on

☐        findings of fact in this case
☐        substantial assistance (18 U.S.C. § 3553(e))
☐        the statutory safety valve (18 U.S.C. § 3553(f))

**III    COURT DETERMINATION OF ADVISORY GUIDELINE RANGE (BEFORE DEPARTURES)**

Total Offense Level: _____

Criminal History Category: _____

Imprisonment Range: _____ to _____ months

Supervised Release Range: _____ to _____ years

Fine Range: $ _____ to $ _____

☐ Fine waived or below the guideline range because of inability to pay.

AO 245B (Rev. 06/05) Criminal Judgment
Attachment (Page 2) -Statement of Reasons

DEFENDANT:
CASE NUMBER:
DISTRICT:

# STATEMENT OF REASONS
(Not for Public Disclosure)

**IV     ADVISORY GUIDELINE SENTENCING DETERMINATION** (Check only one.)

A     ☐     The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart.

B     ☐     The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons.
(Use page 4 if necessary.)

C     ☐     The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual.
(Also complete Section V.)

D     ☐     The court imposes a sentence outside the advisory sentencing guideline system. (Also complete Section VI.)

**V     DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** (if applicable)

A     **The sentence imposed departs** (Check only one.):
☐ below the advisory guideline range; or
☐ above the advisory guideline range.

B     **Departure based on** (Check all that apply.):

1     **Plea Agreement** (Check all that apply and check reason(s) below.):
☐ 5K1.1 plea agreement based on the defendant's substantial assistance;
☐ 5K3.1 plea agreement based on Early Disposition or "Fast-track" Program;
☐ binding plea agreement for departure accepted by the court;
☐ plea agreement for departure, which the court finds to be reasonable;
☐ plea agreement that states that the government will not oppose a defense departure motion.

2     **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
☐ 5K1.1 government motion based on the defendant's substantial assistance;
☐ 5K3.1 government motion based on Early Disposition or "Fast-track" program;
☐ government motion for departure;
☐ defense motion for departure to which the government did not object;
☐ defense motion for departure to which the government objected.

3     **Other**
☐ Other than a plea agreement or motion by the parties for departure (Check reason(s) below.):

**Reason(s) for Departure** (Check all that apply other than 5K1.1 or 5K3.1.)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ | 5K2.1 | Death | ☐ | 5K2.11 Lesser Harm |
| ☐ | 5H1.1 | Age | ☐ | 5K2.2 | Physical Injury | ☐ | 5K2.12 Coercion and Duress |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ | 5K2.3 | Extreme Psychological Injury | ☐ | 5K2.13 Diminished Capacity |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ | 5K2.4 | Abduction or Unlawful Restraint | ☐ | 5K2.14 Public Welfare |
| ☐ | 5H1.4 | Physical Condition | ☐ | 5K2.5 | Property Damage or Loss | ☐ | 5K2.16 Voluntary Disclosure of Offense |
| ☐ | 5H1.5 | Employment Record | ☐ | 5K2.6 | Weapon or Dangerous Weapon | ☐ | 5K2.17 High-Capacity, Semiautomatic Weapon |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ | 5K2.7 | Disruption of Government Function | ☐ | 5K2.18 Violent Street Gang |
| ☐ | 5H1.11 | Military Record, Charitable Service, | ☐ | 5K2.8 | Extreme Conduct | ☐ | 5K2.20 Aberrant Behavior |
| | | Good Works | ☐ | 5K2.9 | Criminal Purpose | ☐ | 5K2.21 Dismissed and Uncharged Conduct |
| ☐ | 5K2.0 | Aggravating or Mitigating Circumstances | ☐ | 5K2.10 | Victim's Conduct | ☐ | 5K2.22 Age or Health of Sex Offenders |
| | | | | | | ☐ | 5K2.23 Discharged Terms of Imprisonment |
| | | | | | | ☐ | Other guideline basis (e.g., 2B1.1 commentary) |

Explain the facts justifying the departure. (Use page 4 if necessary.)

AO 245B (Rev. 06/05) Criminal Judgment
       Attachment (Page 3) -Statement of Reasons

---

DEFENDANT:
CASE NUMBER:

DISTRICT:

# STATEMENT OF REASONS
### (Not for Public Disclosure)

## VI  COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM
(Check all that apply.)

**A**  **The sentence imposed is** (Check only one.):
- ☐ below the advisory guideline range; or
- ☐ above the advisory guideline range.

**B**  **Sentence imposed pursuant to** (Check all that apply.):

   **1**  **Plea Agreement** (Check all that apply and check reason(s) below.):
- ☐ binding plea agreement for a sentence outside the advisory guideline system accepted by the court;
- ☐ plea agreement for a sentence outside the advisory guideline system, which the court finds to be reasonable;
- ☐ plea agreement that states that the government will not oppose a defense motion to the court to sentence outside the guideline system.

   **2**  **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
- ☐ government motion for a sentence outside of the advisory guideline system;
- ☐ defense motion for a sentence outside of the advisory guideline system to which the government did not object;
- ☐ defense motion for a sentence outside of the advisory guideline system to which the government objected.

   **3**  **Other**
- ☐ Other than a plea agreement or motion by the parties for a sentence outside of the guideline system (Check reason(s) below.):

### Reason(s) for Sentence Outside the Advisory Guideline System (Check all that apply.)

- ☐ the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1);
- ☐ to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A));
- ☐ to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B));
- ☐ to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C));
- ☐ to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D));
- ☐ to avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6));
- ☐ to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

Explain the facts justifying a sentence outside the advisory guideline system. (Use page 4 if necessary.)

AO 245B (Rev. 06/05) Criminal Judgment
Attachment (Page 4) – Statement of Reasons

DEFENDANT:
CASE NUMBER:
DISTRICT:

# STATEMENT OF REASONS
(Not for Public Disclosure)

## VII    COURT DETERMINATIONS OF RESTITUTION

A    ☐    Restitution Not Applicable.

B    Total Amount of Restitution:  $ _____

C    Restitution not ordered (Check only one.):

    1    ☐    For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

    2    ☐    For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

    3    ☐    For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

    4    ☐    Restitution is not ordered for other reasons. (Explain)

D    ☐    Partial restitution is ordered under 18 U.S.C. § 3663(c) for these reasons:

## VIII    ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE (if applicable).

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

Defendant's Soc. Sec. No.: _____    Date of Imposition of Judgment _____

Defendant's Date of Birth: _____

Defendant's Residence Address: _____

    _____    Signature of Judge

Defendant's Mailing Address: _____

    _____    Name and Title of Judge

    Date Signed _____